**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**SUSAN KIMBALL,**

      **Plaintiff,**                **Case No.:**

**v.**

**FLORIDA DEPARTMENT OF**
**TRANSPORTATION,**

      **Defendant.**

_____/

## COMPLAINT

Plaintiff, SUSAN KIMBALL, hereby sues Defendant,

FLORIDA DEPARTMENT OF TRANSPORTATION, and alleges:

## NATURE OF THE ACTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621 et seq., as amended, and the Florida Civil Rights Act ("FCRA"), Chapter 760, Florida Statutes.

2. This action involves claims which are, individually, in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

## THE PARTIES

3. Plaintiff, SUSAN KIMBALL, is a 65-year-old Caucasian woman and resident of Florida. She has been employed by the Florida Department of Transportation (FDOT) since May 2013 in its Motor Carrier Size and Weight Division. At all relevant times, she has been an employee within the meaning of the applicable statutes.

4. Defendant, FLORIDA DEPARTMENT OF TRANSPORTATION, is an agency of the State of Florida, with authority over the establishment, maintenance, and regulation of public transportation. At all times pertinent hereto, Defendant has been an employer within the meaning of Title VII, the ADEA, and the FCRA.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action. She timely filed a Charge of Discrimination

with the Equal Employment Opportunity Commission (EEOC Charge No. 511-2024- 03265) alleging race, gender, and age discrimination, and retaliation. She received a Notice of Right to Sue and brings this action within the prescribed period.

## STATEMENT OF FACTS

6. Plaintiff, Susan Kimball, has worked for the Florida Department of Transportation ("FDOT") since May 2013, rising to the role of Facility Supervisor in the Motor Carrier Size and Weight ("MCSAW") division.

7. Plaintiff consistently received strong performance evaluations and was twice honored as Supervisor of the Year, reflecting her competence, leadership, and dedication to FDOT's mission.

8. In September 2023, FDOT posted a vacancy for Statewide Scale Operations Manager. The job description required knowledge of Florida commercial motor vehicle laws, fixed scale operations, supervisory experience, and related skills. It did not require military or government program leadership experience.

9.    On October 4, 2023, Plaintiff applied. Her application showed over 10 years of specialized experience in commercial motor vehicle enforcement, statewide audits, training program development, and leadership roles both within and outside FDOT.

10.    Despite her superior qualifications, Plaintiff was not selected for an interview. Instead, FDOT interviewed three younger male candidates.

11.    On November 1, 2023, FDOT reopened the vacancy for only 24 hours, permitting Steven Marshall, a younger African-American male with no scale operations experience, to apply.

12.    Plaintiff's application remained pending, but she was again denied an interview. Marshall was ultimately selected for the position.

13.    When challenged, FDOT claimed Plaintiff lacked leadership experience at a program or regional level within government or the military. This criterion was never listed in the official position description and was introduced only later in a sworn affidavit by Director of Maintenance Lance Grace.

14.    In truth, Plaintiff had acted as Southern Regional Manager during state-declared emergencies, supervised statewide audits, trained new supervisors, and held prior program-level leadership roles. FDOT's explanation was inconsistent with the record and contradicted by its own managers.

15.    Indeed, panel member Paul Clark opposed Marshall's selection because Marshall lacked basic CMV enforcement knowledge, further undermining FDOT's justification.

16.    Plaintiff also learned from her Regional Manager, Linda Linan, that the process was "not fair," confirming that FDOT's deviation from its stated policies was recognized internally as improper.

17.    In December 2023, Plaintiff filed an internal complaint alleging discrimination based on age, race, and gender. Rather than addressing her concerns in good faith, FDOT responded with heightened scrutiny and hostility toward Plaintiff.

18.    FDOT also retaliated by delaying its internal investigation. The final Equal Opportunity Office report, which had

been completed in early 2024, was withheld from Plaintiff until she was forced to file a public records request on March 5, 2024.

19.    FDOT's refusal to provide the report for nearly three months, despite having completed it, was materially adverse and part of a broader pattern of retaliation against Plaintiff for engaging in protected activity.

20.    Throughout this period, Plaintiff was repeatedly demeaned and undermined by leadership. Director Lance Grace mischaracterized her qualifications, claiming she lacked leadership experience despite clear evidence to the contrary. Other managers treated her as less competent than her male counterparts, despite her superior record.

21.    These actions went beyond isolated decisions; they created a climate where Plaintiff's professional reputation was attacked, her authority diminished, and her contributions disregarded.

22.    The ongoing undermining, heightened scrutiny, and deliberate obstruction of her advancement opportunities constituted harassment that was both severe and pervasive.

23. Plaintiff's treatment was tied directly to her age (65 years old), race (Caucasian), and gender (female), as younger male employees, including Marshall, were given opportunities and leniency that Plaintiff was denied.

24. As a result, Plaintiff was denied advancement opportunities, lost the income and benefits associated with promotion, and suffered reputational harm within FDOT.

25. Plaintiff also experienced significant emotional distress, including stress and humiliation, as a direct result of FDOT's discriminatory and retaliatory conduct, which created a hostile work environment.

26. Defendant's conduct—including the denial of interviews, the manipulation of job criteria, the disparate treatment compared to male and younger employees, the retaliatory withholding of investigation results, and the pervasive undermining of Plaintiff's reputation—was discriminatory, retaliatory, and unlawful under Title VII, the ADEA, and the FCRA.

27. Plaintiff continues to suffer ongoing harm, including the denial of advancement opportunities, loss of income and benefits associated with promotion, reputational harm within FDOT, and emotional distress caused by Defendant's discriminatory and retaliatory conduct.

**FACTS SUPPORTING GENDER DISCRIMINATION**

29. On October 4, 2023, Plaintiff timely submitted her application for the Statewide Scale Operations Manager position. The job posting closed on October 5, 2023.

30. Despite Plaintiff's 10 years of supervisory experience in scale operations, FDOT did not select her for an interview.

31. Instead, FDOT interviewed three male candidates, all of whom were younger than Plaintiff. Plaintiff was the only female applicant with more than a decade of direct commercial motor vehicle enforcement and supervisory experience.

32. On November 1, 2023, FDOT reopened the posting for only 24 hours—after the initial interviews were already conducted—in order to permit another male candidate, Steven Marshall, to apply.

33. Marshall, who was ultimately selected, had no background in scale operations and lacked the listed minimum qualifications. Nonetheless, FDOT granted him an interview while continuing to exclude Plaintiff.

34. FDOT justified its refusal to interview Plaintiff by invoking unwritten, subjective criteria such as "leadership" and "relationships" that were not contained in the official position description.

35. Plaintiff, however, had extensive leadership credentials: she had served as acting Southern Regional Manager during declared hurricane emergencies, had been recognized as Supervisor of the Year in consecutive years, and had authored statewide training manuals used by FDOT.

36. The use of vague and subjective criteria to justify the exclusion of a qualified female candidate, while advancing multiple less-qualified male candidates, demonstrates that gender was a motivating factor in FDOT's decision-making.

## FACTS SUPPORTING AGE DISCRIMINATION

37.    Plaintiff was 65 years old at the time she applied for the Statewide Scale Operations Manager position.

38.    FDOT selected three interviewees from the first posting, all of whom were younger than Plaintiff.

39.    On November 1, 2023, after the initial interview round had been completed, FDOT reopened the vacancy for only 24 hours. This unusual departure from policy created an opportunity for a younger candidate, Steven Marshall, to apply.

40.    Marshall, age 56, was seven years younger than Plaintiff and lacked the decades of supervisory and scale operations experience that Plaintiff possessed.

41.    FDOT disregarded Plaintiff's extensive qualifications— including more than 10 years of supervisory service in MCSAW operations, her leadership of statewide audits, and her authorship of training materials—while promoting the candidacy of younger applicants with less relevant experience.

42.    The decision to exclude Plaintiff from the interview stage, while granting interviews to multiple younger candidates

and ultimately selecting Marshall, reflects FDOT's preference for younger employees in advancement opportunities.

43.    FDOT's abrupt reposting of the position, its deviation from standard procedures, and its failure to apply the official written qualifications consistently, further support the inference that age was a motivating factor in the decision to deny Plaintiff an interview and promotion.

## FACTS SUPPORTING RACE DISCRIMINATION

44.    Plaintiff is a Caucasian woman who applied for the Statewide Scale Operations Manager position on October 4, 2023.

45.    Despite meeting all posted qualifications, Plaintiff was denied even an interview.

46.    FDOT initially interviewed three candidates, two of whom were non-Caucasian males and all of whom were less experienced than Plaintiff in commercial motor vehicle enforcement and scale operations.

47. On November 1, 2023, FDOT reopened the vacancy for 24 hours and allowed Steven Marshall, an African-American male with no background in scale operations, to apply.

48. Marshall was ultimately selected for the position. He did not possess the posted minimum qualifications, lacked enforcement experience, and could not answer key technical questions posed during the interview.

49. FDOT's decision to exclude Plaintiff while advancing Marshall demonstrates disparate treatment on the basis of race.

50. In its later explanations, FDOT claimed that Plaintiff was denied an interview because she lacked "program-level leadership" experience in government or the military. This requirement was not in the job posting, was not applied to Marshall, and directly contradicted Plaintiff's actual record of acting as Southern Regional Manager during hurricane emergencies.

51. FDOT's shifting and inconsistent explanations, combined with its departure from the written job description, permit the inference that Plaintiff's race was a motivating factor in

her exclusion from the interview process and the promotion decision.

## FACTS SUPPORTING HOSTILE WORK ENVIRONMENT

52.     As detailed in paragraphs 3 through 22 above, Plaintiff's experiences at FDOT between October 2023 and March 2024 were not limited to isolated promotion decisions or a single act of retaliation. Rather, Defendant engaged in a sustained pattern of conduct that collectively created a hostile and abusive work environment.

53.     During this period, Defendant repeatedly undermined Plaintiff's qualifications, imposed unwritten criteria after the fact to discredit her, and advanced less qualified candidates. After Plaintiff filed an internal EEO complaint on December 11, 2023, FDOT escalated its hostility by delaying and obstructing the investigation, withholding the final report until compelled by a public records request, and subjecting Plaintiff to heightened scrutiny and exclusion from workplace activities.

54.     As a result of FDOT's conduct—including the refusal to communicate with her, the stonewalling of her internal complaint,

the false affidavits submitted by leadership, and the persistent favoritism toward less-qualified male and minority candidates— Plaintiff experienced ongoing humiliation, emotional distress, and reputational harm. These actions were severe and pervasive enough to alter the terms and conditions of her employment and to create a hostile and abusive work environment.

## COUNT I – GENDER DISCRIMINATION (TITLE VII AND FCRA)

27. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

28. Plaintiff is a female and therefore a member of a protected class under Title VII and the FCRA.

29. Plaintiff was qualified for the Statewide Scale Operations Manager position and performed her job duties in a commendable manner.

30. Defendant subjected Plaintiff to disparate treatment because of her gender, including but not limited to denying her an interview and promotion while favoring less qualified male candidates.

31. Similarly situated male employees with less experience and fewer qualifications were treated more favorably.

32. Defendant's adverse actions culminated in the selection of a male candidate over Plaintiff.

33. Defendant's actions constitute unlawful gender discrimination in violation of Title VII and the FCRA.

34. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and humiliation.

## COUNT II – AGE DISCRIMINATION (ADEA AND FCRA)

42. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

43. Plaintiff was 65 years old at the time of the adverse actions and is therefore a member of a protected class under the ADEA and the FCRA.

44. Plaintiff was qualified for the Statewide Scale Operations Manager position and performed her job duties in a commendable manner.

45. Defendant subjected Plaintiff to disparate treatment because of her age, including but not limited to denying her an interview and promotion while favoring younger candidates.

46. Similarly situated younger employees with less experience and fewer qualifications were treated more favorably.

47. Defendant's adverse actions culminated in the selection of a younger candidate over Plaintiff.

48. Defendant's actions constitute unlawful age discrimination in violation of the ADEA and the FCRA.

49. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and humiliation.

## COUNT III – RACE DISCRIMINATION (TITLE VII AND FCRA)

50. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

51. Plaintiff is a Caucasian female and therefore a member of a protected class under Title VII and the FCRA.

52. Plaintiff was qualified for the Statewide Scale Operations Manager position and performed her job duties in a commendable manner.

53. Defendant subjected Plaintiff to disparate treatment because of her race, including but not limited to denying her an interview and promotion while favoring a non-Caucasian candidate.

54. Similarly situated non-Caucasian employees with less experience and fewer qualifications were treated more favorably.

55. Defendant's adverse actions culminated in the selection of a non-Caucasian candidate over Plaintiff.

56. Defendant's actions constitute unlawful race discrimination in violation of Title VII and the FCRA.

57. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and humiliation.

**COUNT IV – RETALIATION (TITLE VII, ADEA, AND FCRA)**

58. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

59.    Plaintiff engaged in protected activity when she filed an internal EEO complaint on December 11, 2023, alleging discrimination on the basis of gender, age, and race.

60.    Plaintiff was qualified for her position and performed her job duties in a commendable manner.

61.    Defendant subjected Plaintiff to retaliation because of her protected activity, including but not limited to delaying and obstructing its internal investigation and withholding the final report until Plaintiff filed a public records request.

62.    Similarly situated employees who did not engage in protected activity were not subjected to such treatment.

63.    Defendant's adverse actions materially disadvantaged Plaintiff and would dissuade a reasonable employee from making or supporting a charge of discrimination.

64.    Defendant's actions constitute unlawful retaliation in violation of Title VII, the ADEA, and the FCRA.

65.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and humiliation.

## COUNT V – HOSTILE WORK ENVIRONMENT

66. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

67. Plaintiff is a 65-year-old Caucasian woman and therefore a member of multiple protected classes under Title VII, the ADEA, and the FCRA.

68. Plaintiff was qualified for her position and performed her job duties in a commendable manner.

69. Defendant subjected Plaintiff to unwelcome harassment and hostility, including but not limited to: refusing to grant her interviews for advancement despite superior qualifications; reopening the posting to favor a less qualified male candidate; delaying and obstructing its internal investigation after she filed a complaint; and withholding the final report until compelled by a public records request.

70. Management further contributed to the hostile environment by inventing unwritten leadership criteria to discredit Plaintiff, ignoring her extensive record of supervisory and

emergency management experience, and publicly undermining her professional reputation.

71. Similarly situated younger, male, and non-Caucasian employees were not subjected to the same treatment and were instead favored for advancement opportunities.

72. The harassment and hostility Plaintiff endured were severe and pervasive, altering the terms and conditions of her employment and creating an abusive work environment.

73. Defendant's conduct constitutes a hostile work environment in violation of Title VII, the ADEA, and the FCRA.

74. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including lost wages, lost benefits, reputational harm, emotional distress, and humiliation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff SUSAN KIMBALL demands trial by jury, and judgment against Defendant for the following:

(a)  that process issue and this Court take jurisdiction over this case;

(b)     that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendant and for Plaintiff awarding all legally available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)     award Plaintiff interest where appropriate; and

(g)     grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement and award of all lost benefits.

DATED this 1st day of October 2025.

Respectfully submitted,

/s/ Jim Garrity
Jim Garrity [FBN 0539211]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801
E: jim@jimgarritylaw.com
Secondary emails:
elizabeth@mattoxlaw.com
ATTORNEYS FOR PLAINTIFF